**Georgia WARREN et al., Appellants,**

v.

**Roscoe C. SANDERS, Executor of the Estate of Steward D. Sanders et al., Appellees.**

Court of Appeals of Kentucky.

Jan. 20, 1956.

Rehearing Denied March 9, 1956.

John Y. Brown, Harry B. Miller, Jr., Robin Griffin, Lexington, for appellants.

Delbert Eagle, H. Clay Kauffman, Cecil C. Sanders, Lancaster, for appellees.

HOGG, Judge.

On July 15, 1948, Steward D. Sanders, who died in February, 1953, executed his will bequeathing and devising $10,000 to the Lancaster Baptist Church for its building fund, and the balance of his estate was left in trust for the use and benefit of the Church forever. On June 10, 1950, he executed his codicil to the will which, by its terms, adopted the provisions of the will except it named Roscoe Sanders, his brother, as executor, and bequeathed $100 to Mrs. Blakeman and $100 to Mrs. Gooch, to neither of whom he was related. The codicil also provided that testator had owned and sold a farm, the title to which was in the name of his brother Elijah Sanders, and in the event his brother had to pay any income taxes by reason of the farm sale, he should be reimbursed from testator's estate.

The brothers, sisters, nieces, and nephews contested the will and codicil on the grounds of mental incapacity and undue influence. A trial was had before a jury. At the conclusion of all the testimony, each side moved for a directed verdict, both of which motions were overruled. The jury, being unable to agree upon a verdict, was discharged and a mistrial declared. Thereafter, in accordance with CR 50.02, appellees (contestees) moved for a judgment in their favor. The motion was sustained and judgment was entered in favor of appellees. Hence, this appeal.

The underlying question in this case is whether or not the case was one for the jury, or, in other words, whether the evidence introduced on the trial was sufficient to authorize the court to submit the case to the jury upon the issues of mental incapacity and undue influence. We have concluded that the evidence was not sufficient for that purpose, and that the judgment of the lower court was correct.

■ ·At the outset, and before mentioning the evidence presented in the case, we might say ·that undue influence is not in issue because the codicil adopts and republishes the will. We have consistently held that even though the will might have been invalid for one reason or another, a validly executed codicil validates the prior will. Farmers' Bank & Trust Co. v. Harding, 209 Ky. 3, 272 S.W. 3; Hurley v. Blankinship, 313 Ky. 49, 229 S.W.2d 963, 21 A.L.R.2d 817. There was no testimony suggestive of undue influence insofar as the execution of the codicil is concerned. Even if we were to consider the evidence as to undue influence concerning the execution of the will, we would be constrained to hold that the evidence was insufficient to warrant submission of the case to the jury on that theory.

It is the contention of contestants that the unnatural disposition made by the will and codicil, certain statements of the testator, his odd behavior and unusual conduct, and other circumstances constituted substantial evidence of testator's incapacity to make the will and codicil.

In support of their attack upon the will and codicil, contestants presented testimony by relatives of testator, none of whom had received anything under the will. These relatives expressed the opinion that testator was not mentally competent to make a will, giving as a basis for their opinion such facts as: Although of ample means, he would not buy himself the food or clothing that his comfort required; he was filthy and unclean; he would hoard food; sometimes he would take the food from the table from which he ate and put it in his pocket and hide it behind the counter in the restaurant; due to his stinginess he did not get enough to eat; when asked why he did not provide for himself decently, he would answer that he did not know whether he had enough money, although he was worth perhaps $150,000; he was unclean in his toilet arrangements; he was afraid that he might lose what money he had and thought people were after his money; when he was alone he was heard to cry out for someone to get away

from him; he was not very talkative and on occasions would not speak to persons whom he well knew and liked when he met them on the streets; for three or four months before his death in 1953 he boarded at a private residence and at times came out on the porch unclothed; at times during the last several years of his life he was given to exhibit himself practically in the nude to the public and contend that he was clothed; and on occasion would relieve himself out in the yard in daytime. These witnesses further testified, in support of their view he was mentally incompetent, that he gave all of his estate, except the two small bequests, to the Lancaster Baptist Church but seldom went to church; and although a money lender, during the last six or seven years of his life he had his brother Nick attend to a good deal of this lending for him.

For the contestees, there was testimony of persons who knew Mr. Sanders intimately for many years prior to his death, talked with him, borrowed money from him and repaid it to him, including interest which testator himself figured out, and had many other business dealings with him. They stated that he was of sound mind at all times and never said or did anything in their presence which appeared irrational.

The medical testimony indicates that testator was of sound mind at the time he executed the will and codicil. Dr. Edwards, who had known and attended testator for about 30 years, testified that testator was capable of making a will. He admitted that such acts as hollering out when nobody was around, and walking in front of people when comparatively naked, were not actions produced by a normal mind, but added that a person who might do such things could have a perfectly normal mind at all other times when he was not so behaving. Dr. Kinnard attended testator when he was in the hospital in 1950 and 1952. In his testimony he stated that in 1952 testator was senile, illustrating that he was unclean in his person, did not eat properly, was unbalanced at times, went without his clothes at times, and soiled his bed. How-

ever, he expressed no opinion as to the competency of testator to make his will.

Appellants strongly insist that, since testator at times had turned over substantially all of his business to his brother Nick to look after during the years in which the will and codicil were written, the testator demonstrated his incapacity for looking after or understanding his business or his property. There is no doubt that testator had given his brother some of his business interests to look after, but the record reveals that he retained many of the obligations and segments of his business ventures, which were primarily that of lending money. Many of the witnesses testified that they dealt with testator during this period; that he traded with them; that he had issued checks in payment of his obligations, and that he had seemed perfectly normal and capable of doing business. We fail to see that the fact that he delegated some of his business to his brother to be transacted by him in anywise tends to show lack of mental capacity. It seems to us that instead of indicating a distrust of his own capacity it showed that he was entirely capable because he was simply ridding himself of many details of which he desired to be freed. It should further be noted here that one of the checks given by testator was dated the same day his codicil was executed, and another larger check of $6,000 was apparently issued less than one month prior to the date of the codicil for a loan to Mr. Turner. Many other checks were given by testator within two months from the date of the codicil.

We think it is also significant, as bearing on his reason for disposal of his estate in the manner in which he did dispose of it, that the relatives of testator were comparatively well off financially. During his lifetime he had given a home to his brother Roscoe, a home to each of two of his sisters, and a burial ground to his other sister. He had given all of his relatives something, except his brother Elijah who had a considerable estate himself.

As bearing on the question at hand, we think it is further significant to note that by the terms of his codicil he demonstrated complete knowledge of his affairs and how he wanted things left. In the codicil he provided that his brother should not himself pay any income tax, which he might be forced to pay by reason of the sale of the farm, since his brother got nothing out of the sale. But in the event he had to pay any income tax, he should be reimbursed from testator's estate.

It would extend this opinion unduly to set forth in detail all or a substantial part of the evidence introduced in this case. A careful examination of the testimony given by witnesses for contestants reveals that much of the behavior and eccentricities of the old man which they observed occurred in the latter part of 1950, 1951, and 1952, which was after the codicil was executed.

■ In will contests the burden of proof is on contestants to establish the mental incapacity of the testator, since it will be presumed that he possessed sufficient mental capacity to make the will. Tate v. Tate's Ex'r, Ky., 275 S.W.2d 597, 600. In the Tate case the Court also said:

"Opinions of witnesses are insufficient to take a will contest case to the jury, unless the facts upon which the opinions are based tend to establish lack of mental capacity."

Other than the fact that testator had given them nothing by his will and codicil, the relatives based their opinions that he lacked testamentary capacity upon his peculiar actions on various occasions over the period from 1948 to 1953. It is evident that his conduct was abnormal, even for a person who has reached an old age, but it does not indicate that he did not have sufficient capacity to execute his codicil.

When we compare the facts of this case to those in the case of New v. Creamer, Ky., 275 S.W.2d 918, we find a striking similarity. In that case testator lived by himself and became sloven in his habits and appearance, whereas earlier in his life he had been consistently neat and clean. It became difficult to persuade him to change his clothes or take baths. At one time he thought someone

was trying to steal his property. He was forgetful, and on occasions did not recognize his daughter or close neighbor. Under this state of facts we held that there was not sufficient evidence to establish mental incapacity, and directed that a judgment be entered in the court below upholding the will.

Dossenbach v. Reidhar's Ex'x, 245 Ky. 449, 53 S.W.2d 731, is another case similar to the case at hand. There the testator had an estate of about $700,000 but dressed as if he were a tramp. He was so penurious that he did not eat a sufficient amount of food to properly nourish his body, and to save expenses he would walk great distances over the city of Louisville. Most of his estate was left to charity, although he seldom contributed to charitable objects. Here again we held that the evidence was insufficient to establish mental incapacity and sustained the peremptory instruction of the court below.

■ Testamentary capacity requires a lower degree of mental capacity than contractual or business capacity, especially so where the plan of the testamentary disposition in the will and codicil at hand was so simple and uncomplicated. Moore v. Moore, 290 Ky. 715, 162 S.W.2d 547; Bickel v. Louisville Trust Co., 303 Ky. 356, 197 S.W.2d 444. And mere weakness of mental power will not prevent a person from making a valid will. McCrocklin's Adm'r v. Lee, 247 Ky. 31, 56 S.W.2d 564.

Admittedly, the witnesses who testified that testator did not possess mental capacity for making a will and codicil were non-expert witnesses. In Schrodt's Ex'r v. Schrodt, 181 Ky. 174, 203 S.W. 1051, 1053, we said:

"We have frequently written that where the facts relied on are insufficient to show mental incapacity, the opinions of nonexpert witnesses based thereon are likewise insufficient for that purpose."

See also, Cecil's Ex'rs v. Anhier, 176 Ky. 198, 195 S.W. 837.

■ Considering the evidence given at the trial, with all inferences that could reasonably be drawn from it, we are constrained to hold that it is insufficient to support a verdict for the contestants. Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S.W.2d 877. In determining whether or not a directed verdict should have been given in favor of contestees, it was proper to take into view all the evidence. Adkins v. Harlan County, 259 Ky. 400, 82 S.W.2d 425.

Judgment affirmed.

STEWART and SIMS, JJ., dissent for the reason that in their judgment the evidence of mental incapacity is sufficient to take the case to the jury and to sustain a verdict against the will.