Walter L. SIMPSON et al., Appellants,

v.

William SEXTON, Jr., et al., Appellees.

Court of Appeals of Kentucky.

Feb. 7, 1958.

Rehearing Denied April 25, 1958.

Redwine & Redwine, Harold G. Wells, Winchester, for appellants.

Shumate & Shumate, Irvine, for appellees.

MILLIKEN, Judge.

This is an appeal from a judgment entered upon a directed verdict sustaining the probate of a will. The appellants, contestants of the will, refused to participate in the trial after their motion for a continuance was overruled. Although the proponents of the will, the appellees, offered to permit the contestants to present to the jury their affidavits in support of their motion for a continuance, they refused to do so. The proponents then proceeded to introduce the probated will in evidence and to show its proper execution and the proper execution of two codicils made thereto. At this juncture the contestants moved the court to instruct the jury that the will read in evidence was not that of the testatrix and, of course, the motion was denied. Upon motion of the proponents of the will for a directed verdict, the court so instructed the jury.

■ Ordinarily where the will appears rational in its provisions, as it does here, proof of its proper execution is sufficient to establish a presumption of its legality and the soundness of mind of its maker. Such a procedure has the effect of shifting the burden of going forward with the evidence to the contestants, and they must produce evidence on the issue or a verdict should be directed against them on the issue of competency of the maker of the will. New v. Creamer, Ky., 275 S.W.2d 918; Warren v. Sanders, Ky., 287 S.W.2d 146; Russell and Merrit, Probate Practice and Procedure, section 767.

In the case at bar, the testatrix, Margaret Ball, who died in 1956 at the age of 81, had made her will in 1948 and had added two codicils thereto, the latter one being executed in 1951. She had come to Irvine a few years before the execution of the will to live with her unmarried sons, both of whom died before her will was executed. This left her principal heirs at law the children of her brother and their descendants who have contested the will on the ground that she did not have the men-

tal capacity to make the will, and also on the ground of undue influence. The three proponents of the will were not related to the testatrix, but she bequeathed to each of them one-fifth of her estate. The six contestants, her heirs at law, were bequeathed one-fifth of her estate to be divided among them, and the remaining one-fifth went to Bertha Simpson, a sister-in-law of the testatrix, who is not a party to this litigation.

One of the proponents, Alfred Carroll, helped the testatrix manage the oil and gas property from which her estate was derived; the executor, proponent William Sexton, took care of other business matters for her; and the third proponent of the will was Dr. Virginia Wallace Lewis who attended the testatrix regularly over a period of years. Without detailing the will, it may be said it contained provisions for the disposition of the testatrix' fur coat, her garnet cluster ring, her 1940 green Buick sedan, and "the balance of my personal effects, such as all my clothes, trinkets, etc.," which are normal and perhaps typical dispositions for an elderly woman to make.

■ In considering the record on this appeal, it must be pointed out that a continuance was granted the contestants at the May, 1957, term of the Estill Circuit Court with the understanding that they would be ready to proceed with the trial of their case at the following September term. During the interim the contestants took the pre-trial depositions of the cashier of the bank where Mrs. Ball did business, of Mr. Sexton, the executor of the will, and of Dr. Virginia Wallace Lewis, one of the proponents and beneficiaries of the will. A perusal of the depositions indicates that the three deponents attempted to co-operate with contestants' counsel until he asked questions which were not material to the controversy. The cashier of the bank offered to check his records to see whether there was any written authorization to the bank to make payment on checks against the testatrix' account which were signed by any other person. When the cashier was

asked whether he would allow a stranger to check on an account of one of its depositors without written authority, upon advice of counsel, he refused to answer. When the executor of the will, William Sexton, was asked about a conversation which he had just had with his counsel, he too refused to answer upon advice of counsel. After Dr. Lewis had testified that she had given one-eighth of a grain of morphine twice a day to testatrix over a period of years and that such a small dosage did not cause the patient's mentality to deteriorate, she refused, upon advice of counsel, to answer questions to the effect "that modern authorities on narcotics are quite to the contrary and they say continued use of morphine * * * will destroy one's morality and destroy his power to think and reason." Counsel for contestants insisted that these were proper questions and moved the trial court to compel answers thereto under penalty of contempt. The trial court refused to do it, and we think acted within the scope of its discretion in controlling the development of litigation before it. Our generous, modern discovery procedures are subject to excesses and abuse and, when counsel cannot agree on the limits of their discovery rights, the trial court must draw the line for them. We cannot see how the questions here involved could be expected to elicit information material to the issues in the case or that they might lead to the discovery of such evidence. CR 26.02. Certainly, the question addressed to Dr. Lewis was argumentative, and that addressed to the executor, William Sexton, involved an invasion of the privileged relationship of lawyer and client. Counsel for the proponents offered to permit the contestants to examine all canceled checks and records belonging to the testatrix, but that apparently did not satisfy counsel for the contestants.

█ The application for a continuance is addressed to the sound discretion of the court, and unless this discretion has been abused the action of the court will not be disturbed. In the case at bar, the proponents of the will consented to permit the contestants' affidavit for a continuance to be read to the jury as the deposition of their absent witnesses, but this was not done because the contestants were not willing to accept the ruling of the trial court that the case must be tried. The fact that the contestants themselves were among the absent witnesses does not necessarily control when it comes to deciding whether the trial court acted within its sound discretion in refusing the continuance. The affidavit for a continuance stated that Mrs. Pearl Green, a woman 72 years of age, one of the contestants and a niece of the testatrix, had a sudden illness in Birmingham, Alabama, and was unable to make the trip to Kentucky. It stated that Mrs. Green had visited the testatrix in Texas in the middle 40's and at Irvine, Kentucky, in 1951; that the testatrix had been a drug addict for at least thirty years or more, and that she was "fearful and emotionally upset." The affidavit further stated that two other parties to the litigation, who were relatives of the decedent, "know pertinent facts" and "are not here by reason of unavoidable delay." It is further stated that another witness, Mrs. Jewell Alexander Baker, had been subpoenaed the week before, but could not be present because she was in a Lexington hospital expecting a baby; that she had been an employee of the Colonial Hotel where testatrix had a room for a number of years, and that testatrix would come into the lobby in her nightgown, talk to guests, etc.; and that she had to be watched and guarded.

█ It will thus be seen from this summary of the affidavit for a continuance that it is rather general in its terms, and that it does not clearly point out the facts concerning the testatrix' mentality at the time she executed the will and the codicils. It is necessary for a trial court to have power to control the course of litigation. The effect of granting a continuance must be considered from the standpoint of all concerned. Here, we have the settlement of an estate being held up by repeated mo-

tions for a continuance over a period of several months. The contestants apparently had other witnesses present who were prepared to testify as to the mental condition of the testatrix shortly before her death, but none of whom could testify as to her condition at the time her will and codicils were made. When the proponents agreed to the reading of contestants' affidavits to the jury as if they were the depositions of the absent witnesses, the trial normally should not have been postponed because of their absence. CR 43.03.

In the light of all the circumstances as reflected in this record, we conclude that the trial court acted within its sound discretion in refusing to grant the continuance sought, CR 1, and the judgment is affirmed.