Jamie Baker CRUSE, Appellant,

v.

Joseph J. LEARY, Executor of the Estate of Betsy R. Baker, Deceased; Thomas H. Baker, Jr.; Tammie Baker Pride (a/k/a Tammie L. Pride); Lisa A. Cruse; Laura Baker Cassity (f/k/a Laura L. Baker); Tommy S. Baker; Robert M. Baker; and Gregory P. Cruse, Appellees.

Court of Appeals of Kentucky.

April 10, 1987.

Robert W. Kellerman, C. William Swinford, Jr., Johnson & Judy, Stoll, Keenon & Park, Frankfort, for appellant.

Joseph J. Leary, Frankfort, for appellees/Leary and Thomas H. Baker, Jr.

Before CLAYTON, MILLER and WILHOIT, JJ.

MILLER, Judge.

Jamie Baker Cruse brings this appeal from a summary judgment of the Franklin Circuit Court dismissing her complaint to have the provisions of a trust agreement enforced and to stop the probate of a 1977 will allegedly executed by Betsy R. Baker, her grandmother.

The facts are these: On April 14, 1985, Betsy R. Baker died. She was survived by one son, Dr. Thomas H. Baker, Jr., and six grandchildren. One grandchild is Jamie Baker Cruse, appellant herein; her son, Thomas, and her other grandchildren are among the appellees. On or about October 27, 1977, Betsy reportedly executed a will leaving most of her estate to son Thomas. On September 9, 1983, she executed an agreement entitled, "Irrevocable Trust Agreement." Pursuant to this agreement, she transferred certain securities and a sum of cash to Gregory P. Cruse, as trustee, an appellee in this action.[1] The income from the trust was to go to Betsy for life,

and at her death, the principal was to be distributed equally to her son, Thomas, and her grandchildren, unless Betsy should die before December 31, 1987. In case of her death before that date, the instrument provided that Thomas and the grandchildren were to receive the income from the trust until the end of 1987, at which time the principal was to be divided equally among the seven descendants. The agreement included the following provision:

ARTICLE XIII

MISCELLANEOUS

Grantor declares that she has been fully advised as to the legal effects of the execution of this instrument and informed as to the character and amount of the property hereby conveyed and further that the grantor has given consideration to the question of whether the trust herein created shall be revocable or irrevocable, and the grantor now declares that it shall be wholly and completely irrevocable and that grantor shall not have any right, capacity or power at any time to revoke, terminate, alter or amend any of the provisions hereof.

This declaration of trust shall be binding upon the executors, administrators and assigns of the grantor, and the beneficiaries named herein, and upon the successors to the trustee.

Notwithstanding this language, Betsy attempted to revoke the trust. On October 20, 1983, she wrote Gregory (the trustee) that she was not advised of the consequences of the Irrevocable Trust Agreement and asked that all assets be returned to her. Gregory complied. Although the trust agreement contained a provision appointing her son as a successor trustee, the record reveals no attempt at his appointment. Instead, most of the securities were discovered after Betsy's death in a safety deposit box belonging to her.

Just prior to the aforementioned October 20th letter seeking to revoke the trust,

[1]. Gregory P. Cruse is the spouse of appellee/granddaughter, Lisa A. Cruse. He is also the brother of appellant's husband.

Betsy executed another will on October 17, 1983. This will purported to revoke all previous wills (including the 1977 will in question) and divide the majority of estate equally among Thomas and the grandchildren.

On March 22, 1985, while confined to a hospital, Betsy executed with appropriate legal formalities a document entitled, "Codicil." The codicil (1) reaffirmed the terms and conditions of her 1977 will, and (2) revoked all testamentary documents executed after October 27, 1977. After her death, an executed copy of the 1977 will could not be found. Appellee, Joseph J. Leary, an attorney at the Franklin County Bar who had prepared both the 1977 will and the 1985 codicil, presented the Franklin District Court with an unexecuted copy of the 1977 will (obtained from his files), together with the executed 1985 codicil. On June 4, 1985, the 1977 will and 1985 codicil were admitted to probate, the former being as a lost document.

Further, attorney Joseph J. Leary prepared a document purporting to be a "revocation" (actually a release waiver or disclaimer) of all rights in the 1983 trust agreement, as well as the 1983 will. This document was signed by Thomas and four of the grandchildren. It was not signed by appellant/Jamie Baker Cruse or appellee/Lisa A. Cruse.

On December 30, 1985, Jamie filed the instant action in the Franklin Circuit Court. She asked that the 1983 trust agreement be enforced. She alleged that Betsy lacked testamentary capacity to execute the 1985 codicil, and that the 1977 lost will was not sufficiently proven. In short, she sought to establish the validity of the 1983 will and trust agreement. Jamie's complaint was dismissed on summary judgment; the trial court finding there was no genuine issue of material fact. CR 56. This appeal followed.

A summary judgment is proper only when the movant shows that the adverse party could not prevail under any reasonable set of circumstances. *See Paintsville Hospital Co. v. Rose*, Ky., 683 S.W.2d 255 (1985). In the situation *sub judice*, we hold

that summary judgment was improperly granted inasmuch as Jamie has raised several issues which may ultimately be submissible to a jury. We therefore reverse.

▆ Jamie's first contention is that the trust agreement should be enforced. An examination of the document clearly shows that it is an *inter vivos*, rather than a testamentary, trust. The fact that no one other than Betsy would receive benefits until her death does not make it testamentary. *See Restatement (Second) of Trusts* (hereinafter *Restatement*) § 56, note f (1959); *Restatement* § 57 (1959). We also note that many of the securities listed in the trusts were found in Betsy's safety deposit box and, therefore, were apparently under her control. A settlor may name himself as sole trustee without making the trust testamentary. *See Stouse v. First National Bank of Chicago*, Ky., 245 S.W.2d 914 (1951).

▆ Several weeks after executing the trust, Betsy (as settlor) attempted to revoke the document. The question of whether this attempt was successful is one of fact which still must be determined. The general rule holds that, unless a power to revoke is specifically reserved, a settlor can only revoke a trust under certain well-defined situations. *See Restatement* § 330 (1959). A trust can be revoked if the settlor intended to reserve the power of revocation but the instrument mistakenly omitted such. *See Restatement* § 332 (1959). Article XIII of the trust agreement (previously quoted herein) appears to preclude this argument. A trust, however, can be rescinded or reformed upon a showing of factors such as fraud, duress, undue influence, or mistake. *See Restatement* § 333 (1959). Whether any of these factors existed in the case at bar is a fact-question for a jury.

▆ Even if a trust is considered irrevocable, it can be revoked with the consent of the settlor and all the beneficiaries. *See Restatement* § 338 (1959). Appellees direct us to *Phillips v. Lowe*, Ky., 639 S.W.2d 782 (1982), and argue that since Betsy was the sole beneficiary, she was

able to revoke the trust. The situation before us, however, is distinguishable from *Phillips*. In *Phillips*, there was no provision for distributing the trust principal after settlor's death. In Betsy's trust, her son and her grandchildren were to receive the principal upon her death or on December 31, 1987—whichever was later. Any person to whom the settlor intends to give a beneficial interest is considered a beneficiary. *See Restatement* § 127 (1959). *See also Carter v. Spurlock*, Ky., 282 S.W.2d 838 (1955). Therefore, *Phillips* is not controlling in the case *sub judice*.

Jamie next raises the issue of Betsy's testamentary capacity in 1985. A testator is presumed to possess the requisite capacity, it being the burden of the challenging party to prove otherwise. *See Warren v. Sanders*, Ky., 287 S.W.2d 146 (1956). If a will (or, in this case, a codicil) appears rational, proof of proper execution creates a presumption of its legality. *See Simpson v. Sexton*, Ky., 311 S.W.2d 803 (1958). The 1985 codicil was executed with the required formalities and, in her pleadings before the trial court, Jamie presented no documentation or affidavits to cast doubt upon her grandmother's capacity. Nevertheless, Jamie should be granted the opportunity to show that there was a submissible question on this issue.

The final contention is that the contents of the 1977 will were not properly proven. To prove the existence of a lost will, there must be clear and convincing evidence of the document. *See Hollon's Executor v. Graham*, Ky., 280 S.W.2d 544 (1955). The best evidence of this is a copy of the will. *See Madden v. Sevier*, 271 Ky. 688, 113 S.W.2d 41 (1938). In this situation, Betsy specifically referred to the 1977 will in her 1985 codicil. A copy of the will was presented by its drafter. Jamie offered no evidence to dispute the contents. Since the case is being remanded, however, Jamie should have the opportunity to present a submissible question on this issue also.

For the foregoing reasons, the judgment of the Franklin Circuit Court is reversed, and this cause is remanded for proceedings consistent with this opinion.

All concur.