## Beard, Jr., et al. v. Beard.

(Decided January 10, 1917.)

### Appeal from Breckinridge Circuit Court.

1. Deeds—Undue Influence.—Undue influence is a kind of mental coercion, which destroys one's free agency and constrains him to do that which is against his will, so that his act becomes the act of the one exerting the influence rather than his own—such act being one to his own injury or to the injury of some one upon whom he would, if left to his own free will, have bestowed a benefit.

2. Deeds—Undue Influence.—Influence acquired by modest persuasion, arguments addressed to the understanding, or mere appeals to the affections, which do not destroy free agency, is not an undue influence, but influence obtained by excessive importunity, superiority of will or mind, or by any other means which destroy one's free agency and constrain him to do what he is unable to refuse, when exerted over the act of one, in making a deed or will, will render such deed or will void.

3. Deeds—Action to Set Aside.—Where a deed or other instrument, which creates a trust, is not by its terms revocable by the maker;

is understandingly entered into by the parties; and its execution was not procured by undue influence, nor tainted by fraud, it can not be revoked by the maker without the consent of all the parties, but a gift of all of one's estate, without any power of revocation being reserved, is of itself a suspicious circumstance and aided by slight proof of "mistake, misapprehension or misunderstanding" on the part of the grantor will be sufficient to set aside the deed.

CLAUDE MERCER for appellants.

CHARLES CARROLL for appellant, Bank of Hardinsburg & Trust Company.

HENRY DE HAVEN MOORMAN and DAVID R. MURRAY for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

Morris H. Beard died, testate, on the 24th day of October, 1913. His last will and testament was thereafter duly probated. By its terms, he devised his entire estate, real, personal and mixed, to the Bank of Hardinsburg & Trust Co., in trust for his widow and two infant sons. To his widow, the appellee, Sallie M. Beard, he devised one-half of the net income of his estate during her natural life, with directions to the trustee to pay same to her in such amounts as she might desire. The other one-half of his entire estate, and the remainder interest in the one-half, which was devised to his wife for life, he devised to his two infant sons, B. F. Beard, Jr. and Murray Beard. The trustee was directed to pay the income from the one-half of the estate held in trust for the sons, and the income from the one-half devised to his wife, in the event of her death, to the sons or to their guardians, until they should arrive at the age of twenty-five years, respectively, when the principal of the estate should be delivered to them. The trustee was authorized to sell and convey the real estate, and to change the indentity of any of the property when it was for the benefit of the estate, and for the purposes indicated in the will, the trustee was invested with the full possession, control and management of the estate. The Bank of Hardinsburg & Trust Co. was nominated as executor of the will.

The Bank of Hardinsburg & Trust Co. was a flourishing financial institution, engaged in a general banking business, and, also, authorized by law to qualify and

act as the personal representative of deceased persons, guardians for infants and a trustee of trusts. After the probate of the will of Morris H. Beard, the Bank of Hardinsburg & Trust Co. accepted the trust created by the will of decedent and qualified as trustee. It was appointed executor of the will and statutory guardian for the infants, B. F. Beard, Jr., and Murray Beard, and qualified as such executor and guardian. The decedent, Morris H. Beard, had for many years been an officer and employee of the Bank & Trust Company, and to his capacity and faithfulness, it in a large measure, owed its success and prosperity. He was the owner of two hundred shares of the capital stock of this institution at the time of his death, and in addition thereto his estate was considerable.

Before the expiration of one year from the probate of her husband's will, the appellee determined to renounce the provisions of the will as to her, and to claim the dower and distributable share of the estate to which she would have been entitled, if her husband had died intestate. This she did on the 14th day of September, 1914, as provided by law. Upon the same day she executed and delivered a deed, by which she transferred, set over and relinquished unto her two infant sons, above named, her entire one-half interest in the personal estate of her late husband, except that she reserved a life estate in the net income of the property transferred, and the right to cast the vote as the owner of one hundred shares of the capital stock of the Bank & Trust Company, at such times as the stockholders of the corporation were privileged to vote as stockholders of the company. To carry out the purposes of the deed, the property affected by the deed was put in trust and the Hardinsburg Bank & Trust Co. was created the trustee of the parties, to the deed, and empowered to keep and retain in its control and management the property conveyed, with directions to pay to her the net income from the property during her life. It was further provided by the deed, that in the event of her death before her sons should arrive at the age of twenty-five years, the trust should continue until such time, and Marvin D. Beard was made a trustee for the purpose and with the authority to control the voting power of the capital stock affected by the deed, until her sons should arrive at twenty-five years of age.

The Bank & Trust Co. accepted the trust created by the deed, as to it, and Marvin D. Beard did likewise as to the trust in his favor.

In January, 1916, this action was instituted by the appellee, Sallie M. Beard, against the appellants, the Bank of Hardinsburg & Trust Co., as trustee and as guardian for the infants, B. F. Beard, Jr., and Murray Beard, and against the two last named, personally, to set aside and to have adjudged void the deed of trust executed by her on September 14th, 1914, upon the alleged ground that she was procured to execute and deliver the deed by reason of the undue influence exerted upon her by the then president of the Bank & Trust Company, the present president of the company and its attorney, and by reason of certain representations made to her and facts withheld from her, by which she was misled and deceived into executing the deed.

An answer was filed for the appellant, Bank & Trust Company, as trustee and guardian, by which the averments of the petition are traversed, but the present president of the trustee and guardian, being ruled to verify the answer, he declined to do so, upon the ground that he had given testimony to the effect that the deed was procured by an undue influence, which had been exerted upon the appellee. A guardian *ad litem* was appointed for the infant beneficiaries of the deed, who adopted the answer, as his answer to the petition, and the issues were thus formed. After the proof was taken, the cause was submitted, and the chancellor adjudged that the appellee was entitled to the relief sought and that the deed be set aside and held for naught. From this judgment the Bank of Hardinsburg & Trust Co., as trustee and statutory guardian, and the appellants, B. F. Beard, Jr., and Murray Beard, by their guardian *ad litem*, have appealed.

Without undertaking to set out with particularity the evidence of the circumstances under which the deed sought to be cancelled was executed, the following facts seem to have been proven and existed. The appellee was about thirty-seven years of age and was married to her husband at the age of eighteen years; she had never been required to undertake or consider any business matter; she was entirely ignorant of the legal effects of instruments, such as deeds, and, in fact, was entirely without experience in transactions of that char-

acter; she was in a feeble state of health, and had been since the death of her husband, and as described by a witness, "weak, nervous and rundown"; it had been necessary to carry her to Louisville, Indianapolis and other places for treatment, and she was entirely unable to perform the duties of a housekeeper; she had made up her mind, although reluctant to take any step contrary to the will of her late husband, that it was necessary for her future interest that she renounce the provisions of her husband's will, so far as same related to her; if she did so, it vested the control and power of disposition of one-half of the personal estate of her late husband in her, absolutely, and the use and control of one-third of his real estate in her for life; that under the will of her husband she had only the income of one-half of the estate for her life, with no power of disposition of it, except the income when paid to her; she had firmly made up her mind to renounce the will and then to make a will of her own, by which she would devise the property, which she would receive from her husband's estate, to her children at her death; she had never thought of executing a deed of trust, and probably did not know what such an instrument was; she did not have the benefit of the advice of a lawyer, who was acting in her interest, nor the advice of any disinterested person; her husband's father was the president of the Bank of Hardinsburg & Trust Co., which was her trustee, and which then had in its control and management the entire estate of her deceased husband; it was an institution, which had for a part of its business the acting as a trustee of trust funds, and out of which it reaped the profits of such business; she had absolute confidence in the business judgment of her father-in-law and his interest in her welfare; the attorney for the Bank & Trust Co. was the same attorney who prepared her husband's will, and had been intimate in a business way and socially with her late husband; the same attorney was the professional counsellor and friend of her father-in-law; she had entire confidence in the attorney; the present president of the trustee was her deceased husband's brother, in whom she had entire confidence; when she announced her intention to renounce the will of her husband, her father-in-law became fearful that the effect of it would be to injure the confidence of the public in the soundness of the trustee

as a financial institution, and thus be injurious to its interests; he enlisted his son, the present president of the institution, in the same opinion; finding she was determined to renounce the will, he conceived the idea of procuring her to execute the deed of trust, and thus place the property irrevocably in the same condition, so far as appellee's right to its use and control, as it was under the terms of the will; he secured the services of the trustee's attorney to persuade her to execute the deed of trust; the attorney visited her four or more times and argued with her and importuned her to execute the deed of trust; she refused to do so, and announced her purpose to make a will, as above stated; she proposed to seek the advice of her uncle, who was an attorney, then residing at Indianapolis, but the father-in-law advised her that such was useless, as the matter was one which could be attended to by any good attorney; she proposed to take the papers to her uncle for his opinion, but this was not consented to, because it was feared that she might be advised to unconditionally renounce the will and to fail to execute the deed; it was represented to her, that if the trust created by her hsuband's will was removed, that the future of the banking institution, in which her husband had such confidence and pride, would be uncertain and precarious and it would injuriously affect the interests of her and her children; as she says, it was represented to her, that the bank was then in a "tottering" condition and it was feared could not withstand the removal of the trust in the will, unless another was created by a deed; the father-in-law and attorney visited her on several occasions to present these arguments; she sent for her brother-in-law on several occasions to advise with him about it, and he urged her to make the deed, and as he now says, that he overlooked her interests in his zeal for the interests of the bank; the attorney urged that it was her duty to leave the property as her husband had desired it to be; the deed was prepared and taken to and read to her, but she declined to sign it and still insisted that her purpose was to make a will; the attorney returned again and added a fresh argument, to the effect that her father-in-law was old and very much desired her to make the deed, and if she refused to do so, it would probably influence him to her detriment in any provision that he might contemplate making for her in his

will; that at this time she finally consented and executed the deed. She claims and testifies that the attorney represented to her, that she could revoke the deed, at any time she chose, and that she executed the deed under the belief that she could revoke it, and with the intention to do so, when the bank should become in a stable condition, as it was represented to her that it was necessary for the trust to be continued to allow the bank to get into a safe condition. The attorney denied that he represented to her that she would have the power to revoke the deed in the future, but she was not advised, that in order to have such power a clause reserving to herself the right to make the revocation should be incorporated in the deed. Whether such representation was or was not made to her, there is no doubt from the proof, that she believed when executing the deed, that she would have the power to revoke it whenever she desired, and instituted this suit shortly after her mind was disabused upon that subject.

While the consideration for the execution of the deed, as expressed in it, was the love and affection, which the appellee had for her two sons, and a further consideration, the wishes and intent of her husband as contained in his will. Her desire was to make a will, by which she would devise her whole estate to her two sons, and as to the further consideration mentioned, she had upon the same day renounced the ''wishes and intent of her husband as contained in his will.'' While there is some dispute as to what made up the considerations for the deed, the parol proof makes it to satisfactorily appear, that the real consideration for the deed was to avoid any injury to the trustee, as a financial institution, which might arise from any distrust, which might be caused to arise in the minds of the public from the removal by appellee of the trust for her benefit created by the will of her husband, and this consideration was not expressed in the deed. It is, also, apparent that the trustee would be benefited by the control and use of appellee's funds as a trustee for her. The contention, that she understandingly executed the deed, in order to be upheld, it must be made to appear that upon the same day upon which she renounced the provisions of the will and thus became the owner of one-half of the personalty of her late husband's estate, with the right to use and dispose of it at her pleasure, instead of one-

half of the income from it for life, as provided by the will, she, then of her own mind and understandingly, by the deed, irrevocably disposed of all that she had acquired by the act of renunciation, except the voting power of the stock, of which she became the owner, in the Bank & Trust Co. The will gave her the income of the property for life. The deed reserved for her only the net income of her property for life. The effect of the deed was to relinquish substantially all that the renunciation of the will brought her. That the appellee did not desire to execute the deed and, if left to her own will and judgment, would never have done so, there is, from the proof, no doubt.

Undue influence is a kind of mental coercion, which destroys the free agency of one and constrains him to do that, which is against his will, and what he would not have done if left to his own judgment and volition, so that his act becomes the act of the one exerting the influence, rather than his own act—such act being one to his own injury, or to the injury of some one upon whom he would, if left to his own free will, have bestowed a benefit. While the influence, which is acquired by modest persuasion, arguments addressed to the understanding and mere appeals to the affections, and which does not destroy free agency, have been held not to be an undue influence, but the influence obtained by excessive importunity, superiority of will or mind, or by any other means which destroy one's free agency and constrain him to do what he is unable to refuse, when exerted over the act of such a one, in the making of a will or deed, will render the deed or will, made because of such influence, void. Wise, &c. v. Foote, &c., 81 Ky. 10; Lucas v. Cannon, 13 Bush 650; Barlow v. Waters, 16 R. 426; Bush v. Lisle, 89 Ky. 393; Zimlich v. Zimlich, 90 Ky. 657; Overall v. Bland, 11 R. 371; Sherley v. Sherley, 7 R. 612; Fry v. Jones, 95 Ky. 148; Harrison's Will, 1 B. M. 363; Elliott's Will, 2 J. J. M. 343; Broaddus v. Broaddus, 10 Bush 303; McGuire v. McGuire, 11 Bush 142; 39 Cyc. 88; Wood v. Rigg, 152 Ky. 242.

The facts and circumstances detailed in the evidence, in our opinion, justified the chancellor below in arriving at the conclusion, that the execution of the deed of trust was procured by an undue influence exerted over the appellee; that it was not done understandingly by her, and would not have been done by her, if left to

her own free will and judgment. She desired independent legal advice, which she was persuaded not to seek; she was in a feeble state of health, when it is difficult to resist argument and excessive importunity; she had the advice of no one, who had in mind her interests; the parties who procured the execution of the deed were those in whom she had confidence, both in their business judgment and friendship for her, and while it is not intended to say that they intentionally wronged her or were guilty. of any fraudulent purpose, they, by their confidential relations with her, had and obtained complete dominion over her will and caused her to part with the control and use of all her property, at the middle of life, and to do the very thing which she hoped to get rid of by the renunciation of the will; she was altogether inexperienced in business affairs, and did not know the effect of her act.

It is true, that the law pertaining to the creation of trusts in this jurisdiction is, that where the deed or other instrument, which creates the trust, is not revocable by the maker by its terms; is entered into understandingly by the parties, and its execution was not procured by undue influence nor tainted with fraud, it can not be revoked by the maker of it without the consent of all the parties to it; neither can its terms be altered by the maker, except by the consent of the *cestui que trustent*. Coleman v. Fidelity Trust & Safety Vault Co., 28 R. 1263; Anderson v. Kemper, 116 Ky. 339; Middleton v. Shelby County Trust Co., 21 R. 183; Brannin, et al. v. Shirley, 91 Ky. 450. In the case last cited, this court said:

"There can be no doubt, but that a voluntary conveyance or gift made by one who.is competent to act for himself, and understands what he is doing, where the transaction is the result of his own judgment and will, will be sustained by the chancellor, although there is no power of revocation; but a gift of all of one's estate without any revocation or power of revocation, would be of itself a suspicious circumstance and aided by even slight proof of 'mistake, misapprehension or misunderstanding' on the part of the grantor, will be sufficient to set aside the deed."

The judgment is, therefore, affirmed.