QUIST, Appellant v. BETO, Respondent

(135 N.W.2d 730)

(File No. 10170. Opinion filed June 11, 1965)

**Mumford, Protsch & Sage,** Howard, for plaintiff and appellant.

**Lammers & Lammers, L. F. Ericsson,** Madison, for defendant and respondent.

NICHOL, C. J. Plaintiff-appellant, as executor of the estate of Elma J. Volby, deceased, brings this action to set aside a certain declaration of trust in which the defendant-respondent, Ruby V. Beto, was made beneficiary to receive 1,155 shares of Investors Mutual, Inc. Mrs. Beto, the respondent, is a double niece of the decedent and also of her husband, Herman Volby, who had predeceased Elma J. Volby.

Prior to the death of Herman Volby, the Volbys had sold their farm to Ruby V. Beto by contract for deed and for the sum of $48,000, of which $12,000 was paid down. After the sale of the farm, the Volbys moved to Madison, and in 1958 Elma J. Volby, now deceased, suffered a stroke. Her health continued poor, and she suffered another stroke in August 1961.

Mr. Volby died in October 1960, and Mrs. Volby died on February 9, 1962.

After her husband's death in October of 1960, Mrs. Volby actually executed three documents having a bearing on this case. The first document, Exhibit 1, was a revocable declaration of trust, signed by the decedent, Elma Volby, naming Mrs. Beto, her niece, as beneficiary, and was accepted by Mrs. Vol-

by as a payment on the contract for deed for the farm they had purchased from the Volbys, and the Betos were given credit therefor. The second document, Exhibit 2, was executed by Mrs. Volby revoking the first document, after a conference with Mr. Quist, an attorney at law and executor of her estate. Mr. Quist, though present at the trial of this case, did not testify.

The real issue involved in the case is the third document, Exhibit 3, which was executed by Mrs. Volby on November 29, 1961, after consulting with her then attorney, Mr. L. F. Ericsson, and after conferring with a representative of Investors Diversified Services.

It should be noted that this third exhibit changed the beneficiary of the fund back from the estate to Ruby Beto as in the first document, but that it was not for the full amount of the stock, namely, 1,400 shares in the first document, but for only 1,155 shares because of an increase in value of the stock, so that it is obvious that either Mrs. Volby exercised judgment on her own part and/or that she received independent advice from an independent attorney.

Appellant in his assignments of error presents three main questions:

1. Did the Circuit Court err in holding that the respondent, Ruby Beto, sustained the burden of going forward with the evidence to show that she took no unfair advantage of her dominant position to procure the execution of Exhibit 3?

2. Did the Circuit Court err in holding that Elma Volby received independent advice in the execution of Exhibit 3?

3. Did the Court err in holding that Ruby Beto did not exercise undue influence over Elma Volby, and that she took no unfair advantage of her dominant position in securing the execution of Exhibit 3?

On the question of undue influence, the burden is usually on the contestant to establish undue influence by a preponderance of evidence. In re Metz' Estate, 78 S.D. 212, 100 N.W.2d 393. The trial court, however, by reason of the confi-

dential relationship existing between the deceased and the respondent shifted the burden to the respondent, Ruby Beto, of going forward with the evidence and showing that she took no unfair advantage of her dominant position. The trial court then found that the respondent, Ruby Beto, had sustained the burden of showing that she took no unfair advantage.

The evidence clearly showed a close and friendly relationship between the deceased and the defendant. She was a niece of both Mr. and Mrs. Volby, and was the closest of all the relatives to the Volbys, even more so than the adopted son Paul who had left home and had remained away for many years. After Mr. Volby's death in October 1960, Mrs. Volby looked more and more to Mrs. Beto for assistance in both personal and business matters.

The trial court found that although Mrs. Volby was physically weak and at times confused, she was mentally competent. Appellant's counsel even concedes the question of competency, but relied primarily on their claim that Ruby Beto exercised undue influence over Elma Volby and took an unfair advantage of her dominant position in securing the execution of the document now in litigation, Exhibit 3.

This court has held that while the existence of a confidential relation between a decedent and a beneficiary may demand close judicial scrutiny, it does not require a finding of undue influence or raise a presumption thereof, or even cast upon the beneficiary the burden of disproving undue influence. In re Rowlands' Estate, 70 S.D. 419, 18 N.W.2d 290.

The trial court, as stated before, did require the respondent Beto to go forward with the evidence to show that she took no unfair advantage of the decedent. This is no doubt in accordance with the decision of this court in the case of Davies v. Toms, 75 S.D. 273, 63 N.W.2d 406. In the case of McKenzie v. Birkholtz, 74 S.D. 173, 50 N.W.2d 95, we held that the fact that a beneficiary has an opportunity to exercise undue influence upon a grantor to execute a deed will not alone warrant setting the deed aside.

 We feel, as succinctly stated by the Supreme Court of Wyoming in the case of In re Wilson's Estate, 399 P.2d 1008, that it is not sufficient to show that a party benefited by a will had the motive and the opportunity to exert undue influence; but there must be evidence that he did exert it and did so control the actions of the testator that the instrument is not really the will of the testator.

The trial court had the opportunity to study the nature and type of the relationship existing between the decedent and the beneficiary, Mrs. Beto, and the witnesses for the executor, and the various relatives, some of whom claimed undue influence. The trial court through these witnesses no doubt considered the opportunities existing for the exerting of the type of influence or deception claimed to have been employed by Mrs. Beto, the circumstances surrounding the drafting and execution of the various instruments, the existence of a fraudulent motive, if any, and after hearing all of these witnesses and observing their demeanor, resolved all of the issues in favor of the beneficiary, Ruby V. Beto, respondent.

██ ██ This court feels that it is clearly committed to the proposition not only that it must accept as true all evidence favorable to the trial court's findings of fact, except such evidence as is so unreasonable as to challenge the credulity of the court, Hilde v. Flood, 81 S.D. 25, 130 N.W.2d 100, but also that the finding of the trial court on these issues will not be disturbed on appeal where it is supported by substantial evidence and there is not a clear preponderance of evidence against it. Durr v. Hardesty, 76 S.D. 232, 76 N.W.2d 393.

██ In short, the court believes that the trial court was correct when it found that "the preponderance of the evidence shows that Exhibit 3 (the document in issue) was the product of the assistance and help rendered by Mrs. Beto to Mrs. Volby over a period of years and the friendship and affection which developed between them, and that it was not the product of any undue influence exercised by Mrs. Beto which controlled the will of Mrs. Volby."

■ Further, this court agrees with the trial court that the document in question, Exhibit 3, was signed by Mrs. Volby "after receiving independent advice from her own attorney", and that "Mrs. Volby (the deceased) exercised her own will in making the defendant beneficiary" thereunder. Of all of "the nephews and nieces who took the remainder of the estate, it was only Mrs. Beto who had rendered unusual services to her aunt during the long period she needed help. Defendant was the natural object of her aunt's bounty more than any other relative", and the result of the execution of the document in question, Exhibit 3, was "not unnatural under the circumstances shown nor unfair to the other relatives."

Affirmed.

ROBERTS, P. J., and RENTTO, BIEGELMEIER and HOMEYER, JJ., concur.

NICHOL, Circuit Judge, sitting for HANSON, J., disqualified.