Herman SCHROEDER, Jr., and William B. Schroeder, Plaintiffs and Appellees,

v.

HERBERT C. COE TRUST; Farmers State Bank Trust Dept. of Winner, S.D., Trustees; Rosebud Lumber and Coal Co., Inc.; Leo Post, Inc., Receiver, Winner, Tripp County, S.D.; Estate of Herbert C. Coe, a/k/a Herbert Curtis Coe, Deceased, Vickie Coe, Administratrix; Estate of Lelah Mildred Coe, a/k/a Mildred Coe, Deceased, Vickie Coe, Administratrix De Bonis With the Will Annexed; Mildred Coe Elerding; Max Kreinbuhl; Lyle Boerner; El Riad Shrine; Irene Vanneman; Leonard Konvalin; Defendants and Appellants.

Nos. 16103, 16104 and 16117.

Supreme Court of South Dakota.

Oral Argument Oct. 11, 1988.

Decided March 8, 1989.

John J. Simpson, Winner, for plaintiffs and appellees.

Lee Tappe, Platte, for defendant and appellant Vickie Coe.

Donald E. Covey of Covey Law Office, Winner, for defendant and appellant Rosebud Lumber and Coal Co., Inc.

Marvin K. Bailin of Christopherson, Bailin & Anderson, Sioux Falls, for defendant and appellant El Riad Shrine.

J.M. Grossenburg of Day & Grossenburg, Winner, for defendant and appellant Mildred Coe Elerding.

Robert J. Maule, Winner, for defendant and appellant Herbert C. Coe Trust.

Steven K. Rabuck, Chamberlain, for defendant and appellant Irene Vanneman.

Max Kreinbuhl, Lyle Boerner and Leonard Konvalin, pro se.

HURD, Circuit Judge.

This appeal stems from disputes arising over a trust executed by Herbert Coe. Several issues are appealed from the trial court's decision. We affirm in part and reverse in part.

## ISSUES PRESENTED AND HOLDING

1. Were the beneficiaries of the trust sufficiently certain? We hold they were.

2. Did the trial court properly include property in or exclude property from the trust? We hold the trial court did, in part, and did not in part.

3. Did Herbert Coe revoke the trust? We hold he did not.

4. Was the trial court clearly erroneous in holding the trustee acted properly and in awarding fees to the trustee? We hold the trial court was not.

5. Are Herman Schroeder, Jr., and William B. Schroeder (appellees) entitled to attorney fees from the trustee? We hold they are not.

6. Is appellant Vickie Coe entitled to a new trial? We hold she is.

## FACTS

A lengthy summation of the facts is necessary because of the persons involved and numerous events affecting this case. On March 17, 1981, Lelah M. Coe, mother of Herbert Coe and Mildred Elerding, died. In her will she left her entire estate to Herbert, stating that she had already provided for her daughter Mildred. Disputes arose between Herbert and Mildred concerning his management of the Rosebud Lumber and Coal Company (Mildred and Herbert each held equal shares in the lumber company, and Herbert served as president) and whether some property belonged to the lumber yard or was included in their mother's estate. In 1982 Mildred filed a derivative shareholder's action against Herbert alleging fraud and mismanagement in his operation of the lumber yard and sought to place the business in receivership.

Following his mother's death and disputes with his sister, Herbert's drinking increased and his health deteriorated. An irrevocable trust was drafted for Herbert and signed by him on October 22, 1982, which named himself and two employees of the lumber yard, Herman Schroeder, Jr., and William Schroeder, as lifetime beneficiaries. On November 3, 1982, Herbert properly revoked this trust.

A second trust, the subject of this appeal, was drafted and signed by Herbert on November 17, 1982. The November 17, 1982, trust, an irrevocable trust, also named Herbert Coe, Herman Schroeder, Jr., and William Schroeder as lifetime beneficiaries.

Now subject to much dispute, the trust's dispositive provision directed the trustee to distribute the entire sum then held in trust "as I may subsequently appoint by my Will or a Codicil to my Will among any person or persons from the following class ..." Seven people were named in the class. Herbert Coe, however, never specified in his will who should receive the assets from the trust. Instead, he attempted to revoke the trust, both during his lifetime and in his will. His attempts to revoke the trust began after he married Vickie Kreinbuhl, who was formerly married to his best friend, Max Kreinbuhl. Previously a bachelor, Herbert married Vickie on April 13, 1984, and on February 26, 1985, while in the hospital, he executed a will in which he stated his intent to revoke the trust and give most of his estate to Vickie.

On March 13, 1985, a petition was filed in circuit court to revoke the Herbert Coe trust. Vickie Coe appeared in court on behalf of Herbert, who was allegedly too ill to appear. The trial court refused to decide the matter until Herbert personally appeared and stated his reasons why the court should order the trust revoked.

Herbert Coe died on June 15, 1985, never having appeared in court, and leaving several parties to extensively litigate whether his trust or will should control the disposition of property placed in trust. Throughout 1986 and 1987, a declaratory judgment action regarding Herbert's estate was tried in various stages. Several issues are now appealed from the decisions made by the trial court. We examine each separately.

## WERE THE BENEFICIARIES OF THE TRUST SUFFICIENTLY CERTAIN?

■ Appellant, Vickie Coe, contends that the beneficiaries of the trust were uncertain because Herbert Coe never chose who should take from the class. Her contention is without merit. Vickie Coe bases her argument upon the provisions of the dispositive portion of the trust. It provides in relevant part:

At my death, I direct my trustee to make payment of claims against my estate, *then to distribute the entire sum then held in trust as I may subsequently appoint by my Will or a Codicil to my Will among any person or person from the following class:* Lyle Boerner, El Riad Shrine, Mildred Coe Elerding, Leonard Konvalin, Max Kreinbuhl, Herman Schroeder, Jr., William Schroeder and Irene Vanneman. Such appointment may be made for life or such other estate as I may determine, in trust or otherwise, and it may be made subject to lawful spendthrift provisions. It is my intention that any such Last Will or Codi-

cil be executed by me only in the presence of my attorneys and a trust officer of the Farmers State Bank and immediately thereafter filed with the Circuit Court in supervision of this trust to be kept confidential in all respects.

The day after Herbert Coe signed the trust, attorney Tom Tobin sent him a letter urging Herbert to draw up a will as soon as possible in which he would name the persons from the class who would be beneficiaries of the trust residue. Herbert Coe never drafted a will naming beneficiaries of the trust.

The trial court held that the class of beneficiaries was sufficiently definite and that because Herbert Coe failed to select among the class of beneficiaries, the trust property should be divided in equal shares among the members of the class living when Herbert Coe died. We affirm.

Restatement (Second) of Trusts § 120 (1959) provides: "The members of a definite class of persons can be the beneficiaries of a trust." Comment c to § 120 adds that this is true even though "the trustee or another person is authorized to select which of the members of the class shall take and in what proportions." Comment a to § 120 provides a complete answer to Vickie Coe's contention: "A class of persons is definite within the meaning of the rule stated in this Section if the identity of all the individuals comprising its membership is ascertainable."

No problem with identity exists here. Each member of the class was clearly identified by name. Identity problems arise only when the language of the trust is so nebulous in naming beneficiaries that the beneficiaries are unascertainable, and the trust, as a result, violates statutory restraints on the alienation of property. SDCL ch. 43–5. We hold the members of the class of beneficiaries were clearly ascertainable.

Vickie Coe contends that even if the beneficiaries were ascertainable, the trust fails because Herbert Coe failed to name anyone from the class of beneficiaries to receive the trust property. This contention is also without merit. "If the trustee or other person having a power of selection among the members of a definite class fails to exercise it, the trust property will be divided in equal shares among the members of the class, as determined at the time of the expiration of the power, unless the transferor properly manifested a different intention." Restatement (Second) of Trusts § 120, comment e (1959). We believe this statement of the law applies to the trustor, Herbert Coe. Therefore, all members of the class, living at Herbert Coe's death, share equally in the trust property.

■ Vickie Coe contends alternatively that in his will, Herbert Coe selected beneficiaries from the class and designated the property they were to take. In the will, Herbert Coe made specific bequests to certain beneficiaries of the trust. Vickie contends that the remainder of the trust reverts to the estate and passes under the will.

This contention also fails. Herbert Coe clearly stated in his will an intention to revoke the trust. To hold that he selected beneficiaries to take under the trust would be inapposite to his stated intention to revoke the trust. Bequests made in the will pass under the terms of the will and property covered by the will. All property placed in trust passes under the terms of the trust.

### DISPUTED PROPERTY

The respective parties in this case either contest the trial court's decision to include certain property in the trust or to exclude other property from the trust. Excluded property subject to dispute is as follows: all capital stock of Rosebud Lumber and Coal Company (Rosebud Lumber) in either Herbert or Lelah Coe's name, three contracts for deed, bank accounts, any antiques not included in the home when the trust department took pictures of the home and had its contents appraised, and all titled vehicles. Also subject to dispute is the trial court's decision to include an extensive stamp collection in the trust. Subject to certain exceptions set forth below, we affirm the trial court's decision to either ex-

clude property from the trust or to include property in the trust.

### 1. Capital Stock of Rosebud Lumber.

 Herbert Coe assigned his stock and his mother's stock in Rosebud Lumber to the trust. Transfer of all the stock was conditioned upon Herbert C. Coe receiving his mother's (Lelah Coe) 2% interest in Rosebud Lumber. The acceptance of the stock was further conditioned by the following language: "At such times as trustee may deem fit, trustee may have all of the stock certificates held by Herbert C. Coe duly transferred on the books of the Rosebud Lumber and Coal company to Farmers State Bank as trustee of the Herbert C. Coe Trust."

Herbert Coe accepted the preconditions for transfer of the stock when he, along with the trustee and witnesses, signed the agreement for transfer of the stock that was attached to the trust. When Herbert Coe died in 1985, he had not received the 2% interest his mother held in Rosebud Lumber, nor had he attempted to transfer any of the stock to the trustee. We see no reason to disturb the preconditions that Herbert Coe and the trustee agreed to for transferring the stock. Those preconditions were not met and the trial court properly excluded the stock in the lumber yard from the trust.

### 2. Contracts for Deed, Bank Accounts and Vehicles.

 Herbert Coe assigned and transferred three contracts for deed and certain bank accounts and vehicles to the trustee. At the time Herbert Coe signed the trust, Richard Nelson, representative of the trustee, signed the trust, but conditioned the trustee's acceptance of the trust by placing the following statement above his signature: "Not effective until approved by bank counsel." Robert Maule, general counsel for the trustee, Farmers State Bank, subsequently reviewed the trust and attempted to condition acceptance of the trust property by placing the following handwritten note after the assignment of property portion of the trust:

The acceptance of this assignment is conditionally limited until each specific item of property which is titled in its own right, such as motor vehicle titles, shares of stock in the Rosebud Lumber and Coal Company, signature cards evidencing transfer of bank accounts and certificates of deposit not otherwise excluded, is transferred to the said trust department. Acceptance of the assignment of contracts herein alone is conditioned upon the receipt of properly executed deeds transferring title to said trust department.

The preconditions set by the trustee were apparently designed to insure that the trustee received legal title to property and not to disclaim it. Herbert Coe failed to meet the preconditions set by the trustee and the trial court excluded the titled property from the trust. We believe the trial court erred in excluding titled property from the trust because Coe failed to meet the preconditions.

The Restatement (Second) of Trusts does not address the issue of preconditions set by the trustee for the acceptance of property, nor have counsel cited any pertinent authority. We note, however, that the Restatement (Second) of Trusts § 102(4) (1959) provides: "A trustee cannot accept a trust in part and disclaim in part." Comment f to § 102 further explains this statement: "If the trustee accepts the trust as to a part of the trust property, this is an acceptance of the trust of the whole trust property."

The record reflects that the trustee accepted at least some of the trust property into the trust and placed conditions on the acceptance of titled property. We believe the preconditions the trustee placed on acceptance of titled property were ineffective in preventing transfer of that property into the trust. This does not mean, however, that the titled property was transferred to the trustee. Legal title in the property must pass to the trustee before it becomes trust property. 76 Am.Jur.2d *Trusts* §§ 35–36. Our inquiry focuses on whether the trustee received legal title to the disputed items of property.

#### a. Contracts for Deed

■ Herbert Coe transferred and assigned his interest as seller in three contracts for deed by the following language: "I, Herbert C. Coe, ... for value received, hereby assign, transfer, and order paid to Farmers State Bank, Trustee of the HERBERT C. COE TRUST, ... all of the following described property:

Assignor's interest as seller, including legal or equitable interests, the right to receive and collect payments, all rights of foreclosure and enforcement, and the power to deliver title upon satisfaction by purchase of all the terms of the following described [three] outstanding contracts for deed ..."

The usual procedure for conveying an interest in real property is either by warranty or quit claim deed, using the forms found at SDCL 43–25–5 and 43–25–7. South Dakota law, however, does not preclude the use of other forms of warranty and quit claim deeds. SDCL 43–25–9. We hold that Herbert Coe's transfer and assignment of interest as seller in the contracts for deed was in effect a quit claim deed of his legal interest in those properties to Farmers State Bank as trustee.

#### b. Bank Accounts

Herbert Coe assigned and transferred all bank accounts of whatever nature, currently held by Herbert C. Coe at Farmers State Bank of Winner, South Dakota, or Northwestern National Bank in Gregory, South Dakota, excepting Herbert C. Coe's personal checking account at Farmers State Bank and Farmers State Bank Money Market Certificate # 3347 ... and other certificates of deposit. The personal checking account, Farmers State Bank Money Market Certificate, certificates of deposit and cash in hand are expressly excluded from this assignment, and are not to be included in the Herbert C. Coe Trust.

The trial court properly excluded any cash, account, money market certificate or certificate of deposit expressly excluded by the trust assignment. We deal only with any bank account not covered by the exclu-sion. The trial court excluded all accounts because Herbert Coe failed to sign signature cards transferring the accounts to the trustee, a precondition established by the trustee for acceptance of the trust. As stated previously, the trial court incorrectly based its decision to exclude titled property from the trust upon Coe's failure to meet the preconditions set by the trustee. We reverse and remand on this subissue for the purpose of determining whether Herbert Coe transferred legal title in the bank accounts to the trustee by means of the trust provisions.

#### c. Vehicles

■ The assignment conveys all described vehicles to the trust. These vehicles were excluded by the trial court because Herbert Coe failed to transfer the vehicle titles to the trustee. We agree. Legal ownership of a vehicle does not pass unless title to the vehicle is issued in the owner's name. SDCL 32–3–10, 32–3–11. As a result, the trustee did not receive legal title to the vehicles.

### 3. Other Property Excluded from the Trust.

#### a. Antique Property

■ The trial court excluded antique property not included in the Coe home when the trust department took pictures of the home and had its contents appraised. Prior to the date when the bank photographed the home and had its items appraised, Herbert Coe and Vickie Coe removed some antique items from the home. At an even earlier date, Herbert Coe attempted to sell the more valuable antiques of his mother's estate to an antique broker in Nebraska. These antiques, known as the "Covert" antiques, were the subject of extensive litigation in Nebraska. After the Nebraska Supreme Court ruled the antiques belonged to the Lelah Coe Estate, the trustee indicated by letter an intent to bring these antiques within the trust because Herbert Coe had placed his mother's estate within the trust. We believe the "Covert" antiques and all other antiques

formerly located in the Coe home are part of the trust. The trustee should attempt to recover any antiques removed from the Coe home, but the trustee is not responsible for any loss of antiques removed from the home.

### b. Personal Effects of Herbert Coe

■ The assignment excluded all non-antique household goods, clothing, guns and personal effects from the trust. The trial court properly excluded this property from the trust, including the two rings Herbert Coe wore on a regular basis.

### 4. The Stamp Collection.

The trial court included an extensive stamp collection within the trust. At trial, testimony was received by the trial court concerning ownership of the stamp collection. After hearing all of the evidence, the trial court concluded that Herbert Coe, rather than the lumber yard, owned the stamp collection. In reviewing the trial court's decision, great deference is given to the trial court because it was in the best position to observe the witnesses and determine their credibility on this issue. *Smith v. Sponheim*, 399 N.W.2d 899 (S.D.1987). The rule is clear that the trial court's findings of fact must be affirmed unless clearly erroneous. SDCL 15–6–52(a). *In Re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970). We find the trial court's decision was not clearly erroneous and affirm its holding.

### DID HERBERT COE REVOKE THE TRUST?

■ Once a trustor establishes a trust, the trustor must obtain the approval of the beneficiaries to revoke the trust. This is because the property placed in trust no longer belongs to the trustor. SDCL 55–3–6 provides: "A trust cannot be revoked by the trustor after its acceptance, actual or presumed, by the trustee and beneficiaries except by the consent of all the beneficiaries, unless the declaration of trust reserves a power of revocation to the trustor and in that case the power must be strictly pursued."

Herbert Coe did not reserve a power of revocation to himself. The trust instrument expressly excludes this power in the general provisions: "This instrument cannot be altered, amended, revoked or terminated...."

■ In his attempts to revoke the trust, Herbert Coe did not obtain the approval of the beneficiaries. Herbert Coe instead filed a petition with the trial court in April 1985 to revoke the trust. Along with the petition, he filed an affidavit in which he stated that he was intoxicated at the time he signed the trust and did not know what he was signing. His wife, Vickie Coe, appeared in court on his behalf, seeking revocation of the trust. The trial court properly refused to consider the petition to revoke the trust unless Herbert Coe personally appeared and presented his reasons for terminating the trust.

■ Herbert Coe also attempted to revoke the trust in a will he signed while in the hospital in February 1985. It is uniformly held that an attempt to revoke a trust by will is invalid. The power to revoke a trust must be exercised during the trustor's lifetime. Annot., Exercise by Will of Trustor's Reserved Power to Revoke or Modify Inter Vivos Trust, 81 A.L.R.3d 959 (1977). We hold that Herbert Coe's attempts to revoke the trust were ineffectual.

### TRUSTEE'S MANAGEMENT OF THE TRUST AND ATTORNEY FEES AND EXPENSES AWARDED TO THE TRUSTEE

■ Appellees object to the trustee applying trust funds to pay off the balance of a personal loan owed by Herbert Coe to Farmers State Bank. The trial court held that the disposition of the trust funds was proper because Article VII of the trust agreement gave the trustee broad discretionary powers to pay expenses for the personal welfare of the trustor, Herbert C. Coe. We affirm on this issue. A trustee is bound to act in the highest good faith toward his beneficiary and a trustee may not in any manner use or deal with the trust

property for his own profit or for any other purpose unconnected with the trust. SDCL 55–2–1 and 55–2–2. Payment of the personal loan was made within the lifetime of Herbert Coe, who was the principal lifetime beneficiary of the trust, and payment of the loan was to his benefit.

■ Appellees object to an award of attorney fees to the trustee, asserting that the trustee failed to account for and preserve the trust property. Every trustee has a duty to take reasonable steps to control the trust property and to use reasonable care and skill to preserve it. Restatement (Second) of Trusts §§ 175–176 (1959).

■ The trial court found that the trustee properly managed the trust property as well as it could and awarded attorney fees. The record indicates that trust property was removed from the Coe home and lumber yard offices. Under the circumstances, the trustee faced a difficult task in preserving the personal property of the trust. This property was located at the home where Herbert Coe lived and at the lumber yard office where he worked and also maintained an apartment, and was thus outside the trustee's control. On more than one occasion, the trustee attempted to obtain an accounting of the property. It also objected to removal of trust property from the Coe home and threatened to report the loss of property to the state's attorney. Furthermore, the trustee introduced into evidence a document, purportedly entered into by Herbert Coe and the trustee, that released the trustee from all liability for all personal property located in the Coe home while Herbert Coe resided there. In light of this evidence we do not believe the trial court was clearly erroneous in holding that the trustee acted properly and in awarding attorney fees to the trustee.

### APPELLEE'S REQUEST FOR ATTORNEY FEES

The appellees request an award of attorney fees against the trustee. This request is premised upon the assertion that appellees have defended the trust because the trustee has not. As stated previously, we believe the trustee acted properly and any defense of the trust raised by the appellees was prompted out of their own self interest rather than an altruistic defense of the trust. This request is denied.

### NEW TRIAL

Vickie Coe requested a new trial in light of newly discovered evidence pertinent to the issue of whether Herbert Coe was competent when he signed the trust, or whether he executed the trust under duress or fraud. She also requested a new trial on the basis of irregularities during the court proceeding. The trial court denied Vickie Coe's request because it found that much of the alleged newly discovered evidence was hearsay, that she was acquainted with Herbert Coe during the latter part of his life when the events in question occurred and could have, through diligent efforts, uncovered the newly discovered evidence, and that she was represented by counsel throughout most of the hearings.

We believe that the trial court erred in denying Vickie Coe's request for a new trial and remand for a new trial to determine whether Herbert Coe was competent when he signed the trust or whether he executed the trust under duress or fraud.

When reviewing an order denying a new trial, this court may review all matters properly presented by the application for a new trial. SDCL 15–26A–9. Grounds for a new trial are set forth in SDCL 15–6–59(a) and include: "Irregularity in the proceedings of the court, jury, or adverse party or any order of the court or abuse of discretion by which either party was prevented from having a fair trial; ... Newly discovered evidence, material to the party making the application, which he could not with reasonable diligence have discovered and produced at the trial[.]"

■ The facts of this case are, to say the least, unique and add credence to that old cliche that life is stranger than fiction. Upon reviewing the record, we are left with the impression that a new trial is necessary, based upon testimony elicited at another trial which casts doubt upon the competency of Herbert Coe.

On September 3, 1987, Dr. Tony Berg testified in a separate trial concerning the receivership of Rosebud Lumber. Berg testified that he diagnosed Herbert Coe as being alcoholic. On at least fifteen occasions, he came to Herbert Coe's home to examine him; sometimes Berg came at attorney Tom Tobin's request because Tobin wanted a medical opinion concerning Herbert Coe's competency to sign legal documents. Max Kreinbuhl, Herbert Coe's best friend, also testified at the receivership trial that he was certain Herbert Coe signed documents under the influence of alcohol.

At the receivership trial, Max Kreinbuhl gave further testimony that raises questions about whether Herbert Coe executed the trust documents under fraud and duress. Kreinbuhl testified that at one point attorney Tom Tobin asked him if he wanted to be a beneficiary of the trust. Kreinbuhl also testified that he was of the opinion that Tom Tobin exercised considerable influence over Herbert Coe.

 Irregularities in the proceedings also justify a new trial to determine if Herbert Coe was competent or executed the trust under duress or fraud. Prior to the time when the trial court drafted its memorandum opinion holding the trust irrevocable, Vickie Coe was represented at various stages of the trial by either Tom Tobin or William Wernke. Both attorneys possessed conflicts of interest that prevented Vickie Coe from receiving fair representation in this matter. Attorney Tom Tobin, in an action concerning the Lelah Coe Estate, filed an answer admitting the validity of the Herbert Coe trust. This position was clearly contrary to Vickie Coe's best interests, who as the primary beneficiary of Herbert Coe's will stands to gain much more if the trust is declared invalid. In addition, Tobin's dealings with Herbert Coe and his control of trust property raises additional conflicts of interest in his representation of Vickie Coe.

William Wernke, attorney of record for Vickie Coe in her capacity as executrix of the estate of Herbert Coe, also possessed a conflict of interest. Wernke witnessed Herbert Coe sign the trust and may have provided legal advice to Herbert concerning the trust. At a later date he served as best man at Herbert and Vickie's wedding. More importantly, Wernke drafted an affidavit for Herbert Coe in 1985 in which Herbert stated he was intoxicated at the time he signed the trust and did not understand what he was signing. We believe William Wernke's personal involvement with Herbert Coe and the trust made it impossible to adequately represent Vickie Coe in this matter.

We also believe that attorneys Tobin and Wernke possessed conflicts of interest that prevented them from adequately representing Vickie Coe in the trial over Herbert Coe's Estate. These conflicts of interest, combined with the newly discovered evidence elicited at the receivership trial, make it necessary for a new trial to determine if Herbert Coe was competent or if he executed the trust under duress or fraud. Admittedly, much of the evidence elicited at the receivership trial was hearsay. Appellants, however, are entitled to correct any hearsay problems and to present this newly discovered evidence at a new trial.

If, after a new trial, it is determined that Herbert Coe was competent when he executed the trust and that he did not execute the trust under duress or fraud, the trial court should then determine the question of whether the bank accounts, discussed previously, are included in the trust.

Affirmed in part, reversed in part, and remanded.

MORGAN, J., and KEAN, Circuit Judge, concur.

HENDERSON, and SABERS, JJ., concur in part and dissent in part.

KEAN, Circuit Judge, for WUEST, C.J., disqualified.

HURD, Circuit Judge, for MILLER, J., disqualified.

HENDERSON, Justice (concurring in part, dissenting in part).

I respectfully dissent to this entire opinion, as it is now written, with the exception of that portion of the opinion dealing with NEW TRIAL. If this case is being returned for a new trial, as I understand it to

be, to determine if, indeed, there is a valid trust, it makes no sense to propound holdings on

(a) the beneficiaries of the trust;

(b) the property properly includable or excludable in the trust;

(c) if the trust was revoked and its date of revocation;

(d) determining whether the trustee acted properly, and unjust or just award of fees to the trustee; and

(e) lawful entitlement to attorneys fees from the trustee.

For the record, it should be mentioned that an original proceeding was filed to revoke a trust triggered by a petition of Herbert C. Coe to revoke his own trust document. In actuality, that proceeding was never heard to fruition. It was not heard because he died. His original proceeding was instituted on March 13, 1985, and he died on June 15, 1985. We now have before us, on appeal, a motion for a new trial, which was denied below, arising from a declaratory judgment action. Appellees filed the declaratory judgment action alleging that the trust was irrevocable. Hence, the original proceeding and this proceeding both have the basic issue: Should the trust be honored or should it be held for naught?

I would reverse the trial court on the basis that the trial court abused its discretion in denying a motion for new trial. *See Hepper v. Triple U Enterprises, Inc.* 388 N.W.2d 525, 531 (S.D.1986). It is important to recognize that the trial court took evidence on the execution of the trust document. However, no evidence was ever adduced on fraud, undue influence, coercion, or that the trust was established for a fraudulent purpose, *i.e.*, to escape the claims of Herbert Coe's sister. 76 Am. Jur.2d *Trusts* § 93, at 341 (1975), instructs:

> Fraud or undue influence and duress or coercion instrumental in procuring the execution of a deed of trust are grounds for setting it aside. The mere fact, however, that the trustee was the confidential adviser of the grantor is not sufficient to cause the setting aside of the deed, where it appears that the grantor acted on his independent judgment.

Before expressing any evidentiary showings below, I feel it is my duty to express that Attorney Lee Tappe, attorney for appellant Vickie Coe, did not enter an appearance in this case until the substantial part of this trial was over. His ethics are not in question here. Attorney John J. Simpson, attorney for appellee Trust, was not involved in the creation of this trust nor in the early facts giving rise to the questionable birth of a trust, and his ethics are not to be questioned here. During the course of this particular proceeding, the presiding trial judge became highly concerned with what appeared to him to be unacceptable ethical conduct, relating to the creation of this trust, and saw fit to refer the matter to the State Bar of South Dakota. Although it was during the time-frame of this proceeding that the trial judge learned of this, he became knowledgeable of it in a related receivership trial, which was also venued in Tripp County. In *In re Estate of Herm*, 284 N.W.2d 191, 200 (Iowa 1979), the Supreme Court of Iowa held: "Where such a confidential relationship exists, a transaction by which the one having the advantage profits at the expense of the other will be held presumptively fraudulent and voidable." This Court held in *Hyde v. Hyde*, 78 S.D. 176, 186, 99 N.W.2d 788, 793 (1959): "[A] [c]onfidential relationship is not restricted to any particular association of persons. It exists whenever there is trust and confidence, regardless of its origin." *See also Quist v. Beto*, 81 S.D. 375, 135 N.W.2d 730 (1965), for similar pronouncement but holding that friendship and affection between trust or beneficiary was not the product or undue influence which controlled a will of decedent. *Greene v. Greene*, 56 N.Y.2d 86, 91–92, 451 N.Y.S.2d 46, 49, 436 N.E.2d 496, 499 (1982), involving attorney, client, and trust agreement, held that the relationship between an attorney and client "is a fiduciary one and the attorney cannot take advantage of his superior knowledge and position." For a recent case on fraud in a trust agreement, see *Shannon v. Shannon*, 680 S.W.2d 367 (Mo.App.1984). It is obvious to this writer that the trial court must dig into the facts, in the case before us, to determine if there was fraud or undue influence encompassed

within the creation of the Herbert C. Coe trust. First thing's first!

Vickie Coe, through her attorney, Lee Tappe, made motions subsequent to the receivership proceeding, to reopen this case for the purpose of accepting additional evidence. However, the trial court refused to do so. The thrust of these motions, filed on February 23, September 17, and September 29, 1987, all pertained to newly discovered evidence, insufficiency of evidence, and irregularities in the proceedings which Tappe maintained had denied his client, Vickie Coe, a fair trial. It is my opinion that these motions should have been granted in light of the evidence that was discovered. A startling revelation of the background, on the factual backdrop in the creation of this trust, was found in a well-kept diary belonging to one Jeannette Long of Winner, South Dakota, who had been the housekeeper of Herbert C. Coe. She kept very revealing records of Herbert Coe's health and the circumstances in his home, all relevant to his competence when he executed the trust, not to mention many revealing facts about alleged undue influence exerted upon him during states of drunkenness and ill health. She documented the gift of three new automobiles to trust beneficiaries and of trips to Mexico and Canada purchased for them by Herbert C. Coe, not to mention large sums of cash given to these beneficiaries and to his attorney. She documented events concerning suspicions created and arising between the beneficiaries and Herbert Coe's counsel. At one time, she even detailed that she had found this man literally stuck to his chair, in his own excrement, unable to take care of himself. Under this backdrop, a legal document was signed and this diary singularly, with all of its ramifications, should be brought forward in a new trial, accompanied with its writer, to then and there expose the truth. Paramount consideration should be given to possible fraud, undue influence, duress, or coercion in the creation of the trust. There are many other factual details suggesting undue influence which should be amplified and adjudicated upon for justice in this case.

Vickie Coe's counsel moved for a new trial under the provisions of SDCL 15-6-59(a)(1), (4), and (6); and, alternatively, moved for relief pursuant to SDCL 21-24-12. Vickie Coe, through counsel, strenuously advocated that a new trial should be granted because of irregularities in the proceedings. These were supported by affidavits. This includes allegations that certain attorneys acted, when having a conflict of interest, and thereby failed and neglected to advise Vickie Coe to seek independent counsel. These attorneys, it is alleged, prevented Vickie Coe from having a fair trial because they participated in the execution of the trust, and then failed to attack the execution of the trust because of a conflict of interest.

Trustor, Herbert C. Coe, himself admitted and alleged that he was incompetent at the time he executed the trust. He filed an affidavit that he had been in very poor health and was using alcoholic beverages in excess over a long period of time. When executing the trust, by his own affidavit, before he died, he stated that he did not understand that his trust could not be changed or altered. Based upon that petition, the plaintiffs in this action petitioned the circuit court for judicial supervision of the trust. This later spawned the present declaratory judgment action.

We are dealing with a situation of whether or not Vickie Coe received a fair trial. Covering this trust scenario like a blanket is the suggestion of counsel improperly representing conflicting interests and securing a great sum of money when a man was both ill and an alcoholic.

Therefore, I am convinced that the trial court below should now take testimony concerning the competency of Herbert Coe when he executed the trust. Were there attendant circumstances such as excessive importunity, superiority of will or mind, or any means by which the free agency of Herbert C. Coe was destroyed thereby constraining him to do what he was unable to refuse? *Beard v. Beard,* 173 Ky. 131, 190 S.W. 703 (1917). A trust can be rescinded or reformed upon a showing of factors such as fraud, duress, undue influence or mistake. *Cruse v. Leary,* 727 S.W.2d 408, 410 (Ky.App.1987). *See also* Restatement (Second) of Trusts § 333 comment d (1959). Until such time it is determined whether or

not the trust will survive, I cannot join an opinion which is detailed in its analysis on various legal ramifications with a basic tenet, already assumed, that the trust exists. We do not know, at this time, if the trust shall survive allegations of fraud, coercion, undue influence, duress, insufficiency of evidence, and irregularity of proceedings below.

SABERS, Justice (concurring in part and dissenting in part).

I concur on Issue 6, which grants Vickie Coe a new trial. I would not reach Issues 1–5 because they are all dependent on Issue 6. If Herbert Coe was incompetent, intoxicated, or under duress or fraud when he signed the trust, then the trial must begin anew. To do otherwise is a classic example of putting the cart before the horse.